IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JESSICA STEWART and §<br>JAIHA WILSON, §<br>    *Plaintiffs*, §<br>§<br>VS. §<br>§<br>TYLER ER OPERATIONS, LLC, D/B/A §<br>HOSPITALITY HEALTH ER, §<br>    *Defendant*. § | CASE NO. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME PLAINTIFFS JESSICA STEWART and JAIHA WILSON (hereinafter "Plaintiffs"), filing this their Original Complaint and Jury Demand against Tyler ER Operations, LLC d/b/a Hospitality Health ER (hereinafter "Defendant" or "HHER") bringing this action to remedy discrimination on the basis of sex against employees protected under Title VII all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and Tex. Lab. Code § 21.001, *et seq*. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal and state law, which rights provide for relief for illegal discrimination in employment. In support thereof, Plaintiffs respectfully state as follows:

**I.  PRELIMINARY STATEMENT**

1. This lawsuit arises from the sexual harassment of Jessica Stewart and Jaiha Wilson by HHER employee Justin Worthington and the pervasive discrimination by Defendant. Equal to the clear, persistent, and outrageous behavior of Worthington, was the willful, inexcusable neglect and deliberate indifference of the Plaintiffs' employer, HHER, to the injuries endured by Plaintiffs.

Upon information and belief, Worthington's activities victimized other female employees of HHER.

2. It is the legal responsibility of HHER to promulgate and implement policies and procedures providing, in part, that its employees are not subject to sexual harassment. Further, it is Defendant HHER's duty to promulgate and implement policies and procedures that do not promote known acts of sexual harassment and retaliation for opposition to that conduct by its employees. It is also Defendant HHER's legal obligation to take whatever action is necessary to investigate reports of sexual harassment by employees to stop that sexual harassment once known, and to ensure that once sexual harassment is reported no retaliation or reprisal is permitted against the employee who reports or otherwise opposes such protected conduct. Finally, it is their responsibility to ensure that employees who have been the subject of sexual harassment are not retaliated against.

3. Plaintiffs have been compelled to bring this action against HHER because it failed to ensure that the sexual harassment of its employees was prevented once any reasonable doubt of the extent of Worthington's conduct was removed. Plaintiffs also sue for the sexual harassment they endured and HHER's continued failure to prevent the harassment once it had been revealed.

4. HHER is also liable for its negligence which lead to Plaintiffs' sexual harassment at the hands of Worthington because HHER was on notice of his prior history of sexually harassing other female employees of HHER. HHER did not take reasonable care to protect Plaintiffs and other female employees from the actions of Worthington.

5. Plaintiffs seek back-pay, compensatory damages, punitive damages against HHER plus court costs, and attorney's fees.

## II. JURISDICTION AND VENUE

6. The Court has original jurisdiction. Jurisdiction over Plaintiffs' sexual harassment/sex discrimination and retaliation claims against HHER is conferred on this Court by Title VII of the

Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq.*). This Court has jurisdiction to hear the merits of Plaintiffs' claim under 28 U.S.C. § 1331 and 1343(a)(4).

7.  The Court has supplemental jurisdiction over Plaintiffs' claims under Texas state law because those claims derive from the same nucleus of operative facts as Plaintiffs' federal claims so that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

8.  Personal jurisdiction exists generally over Defendant because it has sufficient minimum contacts within the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas, Marshall Division.

9.  Venue is appropriate in this Court as all facts giving rise to Plaintiffs' claims occurred within the Eastern District of Texas. 28 U.S.C. § 1391(a)-(d). Further, Justin Worthington, the harassing supervisor employed by Defendant, resides within the Marshall Division. Justin Worthington is a key and material witness who possesses facts vital to this case.

### III.  ADMINISTRATIVE PREREQUISITES MET

10.  Plaintiff Jessica Stewart filed Charge # 450-2022-05680 with the EEOC alleging a continuing action of sexual harassment, among other things. The EEOC issued a Determination on May 5, 2024, finding that "there is reasonable cause to believe Respondent [HHER] violated Title VII by subjecting her to unwanted and unwelcome comments and conduct based on her protected class." Additionally, the Determination found that the "evidence also suggests there is reasonable cause to believe [Plaintiff Stewart] was terminated [in retaliation] for opposing this environment." Further, EEOC found that "a class of similarly situated female employees were also subjected to a sexually hostile work environment by [HHER]." Plaintiff Stewart received her notice of "Right-to-Sue" on September 4, 2024 (attached as Exhibit "A") and Plaintiff, thereafter,

was able to file this suit. This case is filed within 90 days of Plaintiff Stewart's receipt of her notice of right to sue from the EEOC.

11.     Plaintiff Jaiha Wilson filed Charge # 450-2022-05681 with the EEOC alleging a continuing action of sexual harassment, among other things. As with Plaintiff Stewart, the EEOC issued a Determination regarding Plaintiff Wilson's Charge on May 5, 2024, finding that "there is reasonable cause to believe Respondents [HHER] violated Title VII by subjecting [Plaintiff Wilson to] unwelcome and unwanted conduct of a sexual nature and then [terminated] her in retaliation for opposing this conduct and environment." Further, EEOC found that "a class of similarly situated female employees were also subjected to a sexually hostile work environment by [HHER]." Plaintiff Wilson received her notice of "Right-to-Sue" on September 4, 2024 (attached as Exhibit "B") and Plaintiff, thereafter, was able to file this suit. This case is filed within 90 days of Plaintiff Wilson's receipt of her notice of right to sue from the EEOC.

### IV.     PARTIES

12.     Plaintiff Stewart is an adult female individual and a citizen of Texas and the United States who currently resides in Tyler, Smith County, Texas. At all times relevant to this action, Plaintiff Stewart was an employee of Tyler ER Operations, LLC d/b/a Hospitality Health ER.

13.     Plaintiff Wilson is an adult female individual and a citizen of Texas and the United States who currently resides in Tyler, Smith County, Texas. At all times relevant to this action, Plaintiff Stewart was an employee of Tyler ER Operations, LLC d/b/a Hospitality Health ER.

14.     Defendant, Tyler ER Operations, LLC d/b/a Hospitality Health ER, is a limited liability company, formed in the State of Texas, and may be served through its registered agent for service, Jeanne Shipp, 4615 Ironwood, Baytown, Texas 77521, or wherever it may be found.

## V.     FACTUAL BACKGROUND

15.     Plaintiff Wilson started her career with HHER on April 20, 2016, as a Staff Registered Nurse ("RN"). Plaintiff Wilson's dedication to her job at HHER was recognized by her promotion to Charge Nurse in or about late 2018. Plaintiff Stewart began working for HHER as a Staff RN in May of 2020. Plaintiff Stewart's excellent performance as an HHER employee was also recognized in her various roles of leadership, including as a Relief Charge Nurse.

16.     In their positions as Registered Nurses, Plaintiffs worked alongside Justin Worthington who was also a Staff RN until he was promoted to Director of Nursing in January of 2022 and became a supervisor to Plaintiffs. Before joining HHER, Mr. Worthington had a well-established reputation of not only bullying his female colleagues, but of also subjecting them to sexual harassment and a hostile work environment. Justin Worthington was transferred to the Tyler location in response to several complaints for sexual harassment reported while Mr. Worthington was assigned to another location. Mr. Worthington has lived up to his wanton reputation while at the Tyler location of HHER. Throughout his time working alongside Plaintiffs, Mr. Worthington made repeated unwanted and unwelcome sexual advances toward Plaintiffs and other female employees of HHER.

### A.  FACTS CONCERNING PLAINTIFF STEWART

17.     Throughout their time working together at HHER, Mr. Worthington made repeated unwanted and unwelcome sexual advances toward Plaintiff Stewart. Mr. Worthington habitually pried into the private relationships of Plaintiff Stewart, making his sexual attraction to Plaintiff Stewart no secret to her and others. Mr. Worthington's advances escalated on July 4, 2021. Unbeknownst to Plaintiff Stewart, Mr. Worthington had asked to come to the house of Rose Owens, a fellow RN at HHER, where Plaintiff Stewart had been invited previously to celebrate Independence Day with Ms. Owens. Mr. Worthington's first comment when he arrived was that

he, Plaintiff Stewart, and Ms. Owens should have a "threesome." Ms. Owens told Mr. Worthington to "shut up" and made clear that neither she nor Plaintiff Stewart were interested in a sexual relationship with him.

18. Later that day, while on Ms. Owen's patio with Plaintiff Stewart, Mr. Worthington ran his hands up Plaintiff Stewart's shorts, touched her in her private area, and said, "you're so wet." Plaintiff Stewart pushed Mr. Worthington's hands away and demanded that he stop. In spite of Plaintiff Stewart's vehement objection to his unwanted touching, Mr. Worthington said, "You broke up with your boyfriend so why not?" Plaintiff Stewart again reiterated her objection to Mr. Worthington's behavior. At that point, Mr. Worthington stopped his unwanted touching and both Plaintiff Stewart and Ms. Owens believed he would not touch Plaintiff Stewart again.

19. Shortly thereafter, Ms. Owens went inside her home to use the restroom. When Ms. Owens was no longer present, Mr. Worthington forced himself on top of Plaintiff Stewart while she was sitting in a chair, shoved his tongue down her throat, and forced his hands into her shorts. Plaintiff Stewart fought back and was finally able to push Mr. Worthington off of her. Mr. Worthington then removed his erect penis from his pants, attempted to place it near Ms. Stewart's face and said, "don't you want some of this?"

20. Plaintiff Stewart escaped Mr. Worthington, hurried inside Ms. Owens' home, and immediately told Ms. Owens what Mr. Worthington had done to her. Mr. Worthington followed Plaintiff Stewart inside the home and aggressively yelled, "this bitch is going to tell all of Hospitality! Everybody is going to know!" Attempting to escape additional aggression from Mr. Worthington, Plaintiff Stewart told him that if he left right that minute, she would not tell anyone. Mr. Worthington left Ms. Owens' home, slamming the door behind him.

21. Following that incident, Plaintiff Stewart told her close friend and colleague, Plaintiff Wilson, what Mr. Worthington did to her. However, like many survivors of sexual assault, Plaintiff Stewart instructed Plaintiff Wilson to keep the information confidential as she did not feel comfortable discussing the matter with anyone else. Although Plaintiff Stewart did not share that Mr. Worthington had sexually assaulted her with anyone else at HHER, she did ask all the charge nurses to refrain from pairing her to work with Mr. Worthington and explained that he had been inappropriate with her and made her uncomfortable.

## B.  FACTS CONCERNING PLAINTIFF WILSON

22. Like many of the women employed at HHER, throughout his employment, Mr. Worthington also subjected Plaintiff Wilson to pervasive harassment because she is female. Mr. Worthington inappropriately ogled Plaintiff Wilson, made inappropriate comments about her appearance to her, and made sexual comments about Plaintiff Wilson to other HHER employees.

23. On April 20, 2021, Mr. Worthington sent a Facebook message to Plaintiff Wilson stating, "You know how to take a sexy selfie" followed by several heart eye emojis. Plaintiff Wilson brushed his inappropriate comment aside by laughing, calling him "a mess," and asking whether he had been drinking. Mr. Worthington became even more insistent, stating that "maybe" he had been drinking, but Plaintiff Wilson's picture was "[s]till a beautiful pic tho [sic]." He then told Plaintiff Wilson to keep the conversation "between us." After that conversation, Plaintiff Wilson blocked Mr. Worthington on Facebook.

24. From that point, to the extent she could, Plaintiff Wilson used her best efforts to avoid Mr. Worthington while at work. However, that did not stop Mr. Worthington from making inappropriate comments about Plaintiff Wilson.

25. For example, in December 2021, Mr. Worthington approached Plaintiff Stewart, who is a close friend and colleague of Plaintiff Wilson, and asked whether she and Plaintiff Wilson were in

a sexual relationship with one another. Not only was Mr. Worthington's question extremely inappropriate, but the way he asked the question suggested that he was aroused by the possibility that the two women were involved in a sexual relationship, although they were not.

### C. WORTHINGTON PROMOTED AS SUPERVISOR AND TERMINATION OF PLAINTIFFS

26. Against the recommendation of JulieAnna O'Mally, head of Human Resources for HHER, Jeanne Shipp, an owner of HHER, promoted Justin Worthington to the role of Director of Nursing in January of 2022. When Mr. Worthington became Director of Nursing, he took advantage of his position of power over Plaintiffs. For instance, without justification, Mr. Worthington initiated Plaintiff Wilson's demotion from the Charge Nurse position which she had held for four years. However, that demotion was overturned after Plaintiff Wilson presented Ms. O'Mally with her version of events, which conflicted with what Mr. Worthington had given when he started the process against Plaintiff Wilson.

27. Mr. Worthington did accomplish removing Plaintiff Stewart from her leadership duties and demoting her from her role as Relief Charge Nurse, alleging that he had received "multiple reports from staff about [Plaintiff Stewart's] displeasure about HHER, leadership, and that she is going to end her employment here…" No investigation was conducted regarding these allegations against Plaintiff Stewart. Plaintiff Stewart was never given an opportunity to give her side of the story. When Plaintiff Stewart confronted Mr. Worthington and told him that she believed he was targeting her because of the July 4, 2021, sexual assault, Mr. Worthington said, "that has nothing to do with any of this."

28. After enduring over a year of harassment, bullying, and intimidation, Plaintiffs shared their accounts of Mr. Worthington's sexual harassment with Director of Operations Jaimee Lee who encouraged the women to file a formal complaint with HR—however, upon information and belief,

the Director of Operations took no action apart from offering this advice. Plaintiffs relied on this advice and subsequently filed formal complaints of sexual harassment and discrimination, hostile work environment, and retaliation with Human Resources Director, JulieAnna O'Mally.

29. On March 21, 2022, Plaintiffs met with Ms. O'Mally and HR employee Christina McCord to discuss their complaints against Mr. Worthington in further detail. During that four-hour meeting, each woman detailed her experience with Mr. Worthington. Ms. O'Mally's investigation ultimately substantiated the allegations made against Mr. Worthington and she recommended his termination. However, Defendant HHER refused to take any action against Mr. Worthington. As of the filing of this Complaint, upon information and belief, Mr. Worthington remains the Director of Nursing at HHER.

30. On June 20, 2022, Plaintiffs each filed a charge of discrimination with the EEOC. On October 31, 2022, at the urging of her friends and family and having seen Mr. Worthington's behavior continue unchecked by Defendant HHER, Plaintiff Stewart reported Mr. Worthington's sexual assault of her on July 4, 2021, to the Tyler Police Department. On November 16, 2022, Plaintiff Stewart emailed owner Jeanne Shipp and Ms. O'Mally that Tyler Police Detectives might reach out for information regarding Mr. Worthington.

31. Less than 24 hours after Plaintiff Stewart sent that email, Jaimie Lee presented each Plaintiff with (1) an Employee Counseling form backdated to November 9, 2022, and (2) a termination letter ostensibly for violating the company's "Moonlighting Policy". The Counseling Form given to Plaintiff Stewart listed 4 areas of concern: (1) an alleged September 5, 2022 HIPPA violation; (2) a November 5, 2022 incident wherein Plaintiff Stewart allegedly decided to "deny care" to a minor patient without consulting with Mr. Worthington; (3) an alleged unauthorized "extended" lunch break by Plaintiff Stewart which supposedly lasted 46 minutes instead of the

allotted 30 minutes; and (4) that Plaintiff Stewart "indirectly" supported negative publicity to HHER.

32. Plaintiff Wilson was likewise sent a "counseling form", which only cited amorphous reasons such as "sarcasm" and "causing negativity." Again, the form is unsigned and backdated to November 9, 2022, exactly like Plaintiff Stewart's. Ms. Lee stated that initially HHER was going to place Plaintiffs on probation, but then she supposedly found out that Plaintiffs were operating a "med-spa" and were terminated for violating the "Moonlighting" policy. Neither Plaintiff Stewart nor Plaintiff Wilson have ever seen or been presented with the referenced "Moonlighting" policy.

## VI. CAUSES OF ACTION

33. Plaintiffs bring the following causes of action against HHER, for each of which, they have incurred compensable damage.

### A. SEXUAL HARASSMENT

34. Plaintiffs reallege and incorporate by reference paragraphs 22-32 above as if fully set forth herein.

35. The sexual harassment complained of took on both recognized forms: hostile environment and *quid pro quo*.

36. Plaintiffs belong to a protected group – female.

37. Further, Defendant HHER engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e-2 as delineated in the facts above.

38. Ultimately, Plaintiffs suffered an adverse employment action, including, but not limited to, when HHER terminated their employment.

### B. TITLE VII SEXUAL HARASSMENT

39. Plaintiffs reallege and incorporate by reference paragraphs 22-32 above as if fully set forth herein.

40. Defendant HHER by and through Justin Worthington, sexually harassed Plaintiffs, as described above, in violation of their rights under Title VII. Plaintiffs would show that Worthington is the proxy or alter ego of HHER.

41. Defendant HHER through its agents with remedial authority knew of the harassment, yet failed to take prompt, appropriate, remedial action.

42. Acquiescence by the management of HHER, as well as other officials of HHER, to this clear and persistent pattern of sexual harassment established a custom and practice of HHER to allow sexual harassment of their employees by Worthington.

### C. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E ET SEQ., PROTECTING EMPLOYEES FROM SEXUAL HARASSMENT

43. Plaintiffs reallege and incorporate by reference paragraphs 22-32 above as if fully set forth herein. Plaintiffs were subject to unwelcome sexual harassment in the workplace from Worthington, unreasonably interfering with Plaintiffs' work performance.

44. Officials of HHER with authority to correct the conduct had actual knowledge of Worthington's sexual harassment behavior for years prior to the report of Plaintiffs and/or should have known, and then failed to take immediate and appropriate corrective action as required by law.

45. Plaintiffs would also show that HHER was negligent in the creation and/or continuation of a hostile work environment.

46. Defendant HHER, by allowing Worthington to sexually harass Plaintiffs, intentionally engaged in unlawful employment practices involving Plaintiffs.

47. The harassment of which Plaintiffs complain was severe and pervasive and thereby affected a term, condition or privilege of their employment and created an abusive work environment.

48. Defendant HHER by failing to exercise reasonable care to prevent and cure allegations of sexual harassment, allowed Worthington to sexually harass Plaintiff, as described above, in violation of 42 U.S.C. § 2000e, *et seq*.

49. The sexual harassment began when Worthington was transferred to the Tyler location of HHER and was ongoing, persistent and continuous, constituting violations of Plaintiffs' rights under law.

50. As a direct and proximate result of HHER's conduct in violation of 42 U.S.C. § 2000e, *et seq.*, Plaintiffs suffered substantial emotional and financial damages, past and future, for which they plead to be compensated.

VII. **DISCRIMINATION AND RETALIATION FOR ENGAGING IN PROTECTED CONDUCT UNDER TITLE VII**

51. Plaintiffs reallege and incorporate by reference paragraphs 22-32 above as if fully set forth herein. Plaintiffs were retaliated against by their employer, HHER, for reporting and opposing the sexual harassment to Worthington's supervisors.

52. Plaintiffs reported to HHER, including, but not limited to, by and through Ms. O'Mally and Ms. Lee, facts and circumstances surrounding the harassment of Plaintiffs by Worthington.

53. Plaintiffs' complaints of sexual harassment, as described above, motivated the termination of Plaintiffs from their employment by HHER and/or other adverse employment actions. In fact, Defendant terminated the employment of Plaintiffs within 24 hours after Plaintiff Stewart advised HHER of the investigation into the criminal actions of Justin Worthington and within a few months of Plaintiffs filing their EEOC complaints against HHER.

54. Defendant HHER intentionally engaged in unlawful employment practices involving Plaintiffs because Plaintiffs engaged in a federally protected activity in violation of their rights under 42 U.S.C. § 2000e-3(a), *et. seq.*

## VIII.   CLAIMS UNDER TEXAS LABOR CODE

55.     Plaintiffs reallege and incorporate by reference paragraphs 22-32 above as if fully set forth herein.

56.     Plaintiffs would further show that they were subjected to discrimination and retaliation in violation of the Texas Labor Code in that Defendant HHER knew or should have known that Plaintiffs were being sexually harassed by Justin Worthington, failed to take immediate and appropriate corrective action, and, in fact, fired Plaintiffs for opposing the discriminatory practice. Tex. Lab. Code § 21.001, *et seq*.

## IX.   ACTUAL DAMAGES

57.     As a direct and proximate result of the conduct of Defendant, Plaintiffs have suffered substantial emotional and financial damages, past and future, proximately caused by HHER's termination and retaliation for which Plaintiffs now seek compensation.

58.     Plaintiffs have suffered disgrace, shame, embarrassment and humiliation as well as extreme emotional and mental anguish in the past and in all probability, Plaintiffs will continue to suffer such disgrace, shame, embarrassment, humiliation, personal indignity and extreme emotional and mental anguish in the future.

59.     In addition, Plaintiffs have suffered damage to their reputations both in the past and in the future. Injury to the reputations of the Plaintiffs has been substantial and, in all probability, their reputations have been permanently impaired and damaged.

60.     Additionally, Plaintiffs have suffered loss of earnings capacity in the past and in reasonable probability, their capacity to work and earn money in the future beyond this date have been seriously impaired because of Defendant's retaliatory and discriminatory termination of Plaintiffs' employment. Plaintiffs' ability to obtain and retain employment in the past and future have been impaired. Plaintiffs are entitled to back pay and front pay. Reinstatement is not feasible.

61. Plaintiffs have been deprived of employment benefits. Employment benefits include all employment benefits which they had or would have had at Defendant HHER's employ, including but not limited to past and future wages, retirement benefits, health care benefits, social security benefits, and unemployment benefits.

62. Plaintiffs have suffered additional consequential damages. The precise amount of damages suffered by the Plaintiffs cannot be measured with mathematical accuracy at this time nor can the Plaintiffs state with any degree of certainty at this time the full extent and impact of future losses. Damages can be more accurately determined after completion of discovery in this case and Plaintiffs specifically reserve the right to plead further with respect to such damages.

## X.   PUNITIVE DAMAGES

63. HHER is liable for punitive damages on account of its completely willful and reckless disregard of Plaintiffs' rights under Title VII and the Tex. Lab. Code § 21.001, *et seq*. The conduct was also wanton, willful, reckless, and/or intentional, to cause substantial harm or injury, rendering the award of punitive damages appropriate.

## XI.   JURY TRIAL

64. In the exercise of rights under the Seventh Amendment to the United States Constitution and applicable statutes and procedural rules, Plaintiffs respectfully request that all issues of fact in their claims for relief be decided by a jury.

## XII.   PRE-TRIAL INTEREST

65. Plaintiffs also seek pre-judgment interest at the maximum legal rate.

## XIII.   ATTORNEYS' FEES

66. Plaintiffs are entitled to reasonable and necessary attorneys' fees pursuant to 42 U.S.C. § 2000e and 42 U.S.C. § 1988 for the preparation and trial in this case and various stages of appeal,

if any, including additional attorneys' fees in the event it is necessary to collect this amount of money once a judgment becomes final.

## XIV.    PRAYER

67.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs Jessica Stewart and Jaiha Wilson respectfully pray that Defendant HHER be cited to appear and answer herein, and that upon a final trial by jury, judgment be entered for the Plaintiffs against the Defendant for damages in an amount within the jurisdictional limits of the Court, and such other and further relief to which the Plaintiffs may be entitled at law or in equity, including:

   a. actual damages;
   b. punitive damages;
   c. pre-judgment interest;
   d. post-judgment interest;
   e. attorneys' fees; and
   f. costs.

Respectfully submitted,

**THE MCGUIRE FIRM, P.C.**
102 N. College Ave., Suite 301
Tyler, Texas 75702
Telephone:  903-630-7154
Facsimile:  903-630-7173
shane@mcguirefirm.com
kevin@mcguirefirm.com

*/s/ Shane McGuire*
**SHANE MCGUIRE**
State Bar No: 24055940
**R. KEVIN RHYNE**
State Bar No: 00797309

**AND**

**SOREY & HOOVER, LLP**
133 E. Tyler St.
Longview, TX 75601
T: (903) 230-5600
F: (903) 230-5656
dan@soreylaw.com
ghoover@soreylaw.com

**R. DANIEL SOREY**
TX State Bar No. 24041957
AR State Bar No. 2004064
LA State Bar No. 29430
NM State Bar No. 21815

**GEOFFREY G. HOOVER**
TX State Bar No. 24074437

**ATTORNEYS FOR PLAINTIFFS**